IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**GLENDA R. COOPER,**

    **Plaintiff,**

vs.                                            CASE NO. 5:05cv162-RS/WCS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Glenda R. Cooper, applied for disability insurance benefits. Plaintiff was 53 years old at the time of the administrative hearing, had a 12th grade education with some vocational training, and had past relevant work as a cashier and night auditor. Plaintiff alleges disability due to impairments and pain in her back and leg. The

Administrative Law Judge found that Plaintiff may still do her past relevant work and thus was not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence of record**[1]

### Administrative hearing

Plaintiff alleges onset of disability on July 12, 2001, as a consequence of a fall at work on that date. R. 74, 42. Plaintiff testified at the administrative hearing that she worked four hours a day, off and on, from January through September, 2002. R. 44. She said that her treating physician, Dr. Rohan, "had me working" until he referred her to Dr. Springer. R. 46. She said that Dr. Springer "immediately took me off work." Id.

Plaintiff said her husband was also disabled, and they both did the household chores "very carefully" with the help of her adult daughter. R. 45. Plaintiff said that she cares for her daughter's eight month old son five days a week, five and one-half hours a day. R. 46. Plaintiff further testified she cannot stand more than 5 or 10 minutes without back pain. R. 47. She said she cannot bend at all and cannot walk without her cane. R. 48, 50. She said that she paces herself doing housework and dishes. R. 47.

---

[1] Definitions of medical terms are from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:

http://www.mercksource.com/pp/us/cns/cns_hl_dorlands.jspzQzpgzEzzSzppdocszSzuszSzcommonzSzdorlandszSzdorlandzSzdmd_a-b_00zPzhtm.

She said she walks a mile a day on the recommendation of Dr. Springer.  R. 48.  She can shower, but no longer can take a tub bath.  *Id*.  Plaintiff said that the epidural steroid injections helped, alleviating the pain each time for about three months.  R. 50.

The Administrative Law Judge asked the vocational expert to assume that Plaintiff had the residual functional capacity to do light work, except for anything more than occasional climbing, kneeling, stooping, balancing, bending at the waist, crouching, or crawling, and without working around dangerous or moving machinery or in unprotected heights.  R. 52.  The vocational expert said that the cashier job required the ability to do light work and the night auditor job was sedentary.  *Id*.  Assuming the hypothetical to be true, the vocational expert said that Plaintiff could return to her past relevant work as a cashier and as a night auditor, and with her education and age, could also do several other jobs in the national economy.  R. 53.  The vocational expert also testified that if Plaintiff suffered from "severe pain," or could not work "eight hours a day, five days a week on a regular and sustained basis," then in either case Plaintiff would not be employable.  R. 54.

### Medical record

Plaintiff was injured in a fall at her work on July 12, 2001.  R. 130.  She was examined by Michael X. Rohan, M.D., on August 15, 2001.  *Id*.  Upon examination, Dr. Rohan found no tenderness or muscle spasm in the lumbar spine, and the straight leg raising test was negative for pain.  *Id*.  He noted a history of a pinched nerve in her left leg from 1988, with treatment at that time and resolution of her symptoms.  *Id*.  An x-ray

revealed some degenerative changes over the superior and inferior aspect of her spine at L-3. *Id.* Dr. Rohan ordered an MRI. *Id.*

An MRI was conducted on September 18, 2001. R. 129. This showed at "L5-S1 there is moderate loss of height and signal intensity of the disc with posterior central and left paracentral protrusion for about 7 mm with moderate to marked impingement on the left nerve root." *Id.* It was also noted that there was "moderate loss of signal intensity and slight reduction of height of the discs L2-3, L3-4 and L4-5 with posterior annulus bulging with slight impingement on the anterior aspect of the thecal sac without significant impingement on the nerve roots." *Id.* The clinical diagnosis was low back pain with radicular symptoms. *Id.*

On September 26, 2001, Dr. Rohan found that Plaintiff continued to experience pain, mostly in the region of S1 where the nerve impingement had been noted from the MRI. R. 128. Straight leg raising, however, was negative for pain. *Id.* Dr. Rohan provided an epidural and Skelaxin for pain relief. *Id.* By November 21, 2001, Dr. Rohan reported that Plaintiff was "still awaiting permission for a lumbar epidural," apparently meaning permission for payment from some form of insurance. R. 127. He noted that Plaintiff's pain was predominately in the lower back, though straight leg raising was again negative for pain. *Id.* He thought that surgery should be considered if the epidural injections did not work. *Id.*

The epidural had not been provided by December 5, 2001, or January 16, 2002, and Plaintiff continued to have pain in her mid lumbar area. R. 126, 125. Dr. Rohan said that Plaintiff could "work light duty four hours a day." *Id.*

Case No. 5:05cv162-RS/WCS

On May 31, 2002, Dr. Rohan saw Plaintiff, noting that she was then working "six hours on occasion with some increase of discomfort." R. 124. The pain continued to be in the mid lumbar region with some radiation into the leg. *Id.* Dr. Rohan thought that Plaintiff was capable of "light duty five days a week, four hours a day," and he said that "a trial period for six hours would probably be indicated." *Id.*

On July 8, 2002, Plaintiff called the office to report she was having leg pain but did not need an appointment. R. 124. Plaintiff returned to Dr. Rohan on July 31, 2002, stating that her back pain was worse and the pain could go down either leg, but was mostly on the left side. R. 123. She reported that Dr. Derbes had released her as having achieved maximum medical improvement; she had finished the epidurals, "which did not help." *Id.* Straight leg raising was again normal. *Id.* Plaintiff said she was "reasonably comfortable working four hours a day," and Dr. Rohan released her to work four hours a day, six days a week. *Id.*

An MRI on August 22, 2002, showed a moderate left posterior disc protrusion causing deformity of primarily the left S1 nerve root at L5-S1. R. 120. Mild stenosis[2] was reported at L3-4 and L4-5, and to a lesser degree at L2-3. *Id.*

On August 28, 2002, Plaintiff returned to Dr. Rohan for follow-up. R. 122. She reported having increasing pain in the back and left leg. *Id.* Straight leg raising was "tight" at 90 degrees on the left. *Id.* Dr. Rohan noted a recent MRI showing a ruptured

---

[2] An abnormal narrowing of a duct or canal. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

disc at L5-S1.  *Id.*  He recommended that she continue working four hours per day in a light duty job and referred her to Dr. Stringer for possible surgery.  *Id.*

On October 2, 2002, Plaintiff was examined by Merle P. Stringer, M.D., a neurologist, for a surgical work-up.  R. 183.  Dr. Stringer noted that epidurals and physical therapy had not helped Plaintiff's pain.  R. 181.  Dr. Stringer said that about two months earlier, Plaintiff had begun working six hours a day and began to have increased pain in her back and left leg, "but her main difficulty is left leg pain."  R. 183.  She complained of paraesthesias of her left leg and foot.  *Id.*  Upon examination, Dr. Stringer found:

> She has marked tenderness to palpation in the mid and lower lumbar area and both SI joints, marked muscle spasm, myofascitis, limitation of forward bending to 50% of normal.  Straight leg raising is positive on the left.

R. 182.  Dr. Stringer noted that there was displacement of the left S1 nerve root.  R. 181.  With Plaintiff's permission, Dr. Stringer scheduled surgical lumbar decompression of L3-4, L4-5, and L5-S1, with decompression of the nerve roots.  *Id.*

Surgery was performed on November 20, 2002.  R. 180.  By December 9, 2002, it was reported that Plaintiff had "done well with significant improvement in her preoperative symptomatology," no radicular leg pain, and with "minimal back pain."  *Id.*  She had some paravertebral muscle spasm in her back on examination.  R. 179.

On January 21, 2003, Dr. Stringer again examined Plaintiff.  R. 178.  Dr. Stringer found:

> She is much better, having very little pain in her back, occasional hamstring pain on the left, but has improved significantly.  She is walking

more. She has some muscle spasms of the lumbar spine area, but no radicular pain.

R. 178. On examination he found that she had

> moderate tenderness to palpation in the mid and lower lumbar area and both SI joints, worse on the left, moderate muscle spasm, myofascitis with trigger point tenderness, limitation of forward bending to 70% of normal. Straight leg raising causes low back pain, no radicular component.

R. 176. He recommended that Plaintiff "continue increasing her activity, continue her exercise and weight reduction program." *Id.*

On February 20, 2003, Dr. Stringer again examined Plaintiff. R. 174. She was currently going to outpatient physical therapy "with some improvement in her symptomatology." *Id.* On examination, there was "no evidence of paravertebral muscle spasm." R. 173. She had moderate limitation of back flexion and extension, "secondary to pain, which she localizes in her lower back," but without any radicular component. *Id.* Dr. Stringer's diagnosis was "low back pain, no evidence of lumbar nerve root compression or cauda equina[3] compression." *Id.* Dr. Stringer scheduled Plaintiff for an "FCE," a functional capacity evaluation, and ordered that she "remain off work." *Id.*

Plaintiff returned on April 3, 2003. R. 172. She reported to Dr. Stringer that she still had some pain in her back, with muscle spasm, that was worse with increased activity. *Id.* On examination, Dr. Stringer noted that Plaintiff had

---

[3] The collection of spinal roots that descend from the lower part of the spinal cord and occupy the vertebral canal below the cord, resembling the tail of a horse. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

> moderate to severe tenderness to palpation of the lumbar area and both SI joints. There is moderate to severe muscle spasm and myofascitis with trigger point tenderness. Limitation of forward bending to 50% of normal. Straight leg raising causes low back pain, SI joint pain and some hamstring tightness. Limitation on extension and lateral bending to 50% of normal. There is increased pain with extension indicating facet joint pain.

R. 171. Again, he found no evidence of nerve root compression. *Id.* Dr. Stringer recommended trigger point injections. R. 170. Dr. Stringer noted that the functional capacity examination "demonstrated work capabilities to be light, maximum lifting 20-25 pounds." *Id.* Plaintiff was to try to work with these restrictions, but reported that in the week after the exam, she had had a significant increase in pain. *Id.*

Plaintiff returned to Dr. Stringer on May 5, 2003. R. 170. On examination, the same findings were made as made on April 3, 2003. R. 169. Dr. Stringer scheduled Plaintiff for EMG[4]-NCV[5] studies, injections, and outpatient therapy. R. 168.

On June 4, 2003, Plaintiff returned, stating she still had back pain and muscle spasms, worse with increased activity. R. 168. Essentially the same pain and limitation findings were noted as in April and May, 2003. R. 167. There was no evidence of nerve root compression. R. 166. Dr. Stringer said that from the EMG-NCV studies, there was a suggestion of S1 radiculopathy and some irritation of the posterior spinal roots. *Id.* Another physician had determined that the injections were not medically necessary, and Dr. Stringer disagreed with that finding. *Id.*

---

[4] Electromyography, that is, an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[5] Nerve conduction velocity testing. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

Dr. Stringer saw Plaintiff again on June 20, 2003. R. 164. Plaintiff had twisted in her chair the day before, causing severe pain in her back and both legs. *Id.* There were no radicular symptoms. *Id.* Moderate tenderness to palpation was found in the mid and lower lumbar region and both SI joints, with mild muscle spasm, forward bending to only 50% of normal, and positive straight leg raising for pain. *Id.* There was no clinical evidence of nerve root compression. R. 165. Dr. Stringer recommended lumbar facet, SI joint, and trigger point injections. *Id.*

On August 12, 2003, Dr. Stringer noted that after an injection on August 5, 2003, Plaintiff's pain decreased from 8 to 2. R. 163. She had returned for the third in the series of injections, which were administered that day. *Id.* Dr. Stringer said that Plaintiff had not responded to conservative treatment. *Id.* On September 16, 2003, Plaintiff was seen again by Dr. Stringer for another set of injections. R. 162.

Dr. Stringer again saw Plaintiff on October 8, 2003. R. 216. Plaintiff said her pain was at level 8. *Id.* Another round of injections was administered. *Id.* On December 18, 2003, Plaintiff returned to Dr. Stringer. R. 215. She had moderate tenderness to palpation, moderate muscle spasm, forward bending had increased to 70% of normal, and straight leg raising was positive for pain. R. 214. Dr. Stringer found that Plaintiff's lumbar spine was "much better than it was prior to the injections." *Id.* Dr. Stringer felt that Plaintiff had reached maximum medical improvement with a 9% impairment of her body. R. 213.

On January 28, 2004, Dr. Stringer found that Plaintiff was still having pain, worse with increased activity, and was suffering increased pain for the prior few weeks. R.

213. On examination, the moderate findings of December had become marked findings of pain upon palpation, marked myofascitis, limitation of forward bending was back to 50% of normal, and straight leg raising caused pain.  R. 210.  There was no clinical evidence of nerve root compression.  *Id.*  The diagnosis was "severe myofascitis of the lumbar spine, SI joint and facet inflammation with trigger point tenderness."  *Id.*  Plaintiff was to have another round of injections.  R. 209.

Plaintiff had a functional capacity evaluation on February 23, 2004.  R. 205-208. It was reported that Plaintiff's pain was 3 on a scale of 10 prior to the evaluation, 4 with easy tasks, and increased to 8 on the treadmill with an incline and during attempted lifting activity.  R. 208.  Plaintiff reported that she could sit for 20 minutes and then shift body weight, stand still for 5 minutes, dynamic stand for 30 minutes, walk for 15-30 minutes, lift 10 to 20 pounds, and carry 30 pounds.  *Id.*  Her L5-S1 and cervical areas were very painful to touch, and forward flexion was also very painful.  R. 207.  The conclusion was that Plaintiff was "deconditioned, guarded and painful with flat effect." R. 206.  She "put forth effort and was consistent throughout her evaluation."  *Id.*  It was concluded that Plaintiff demonstrated capability of working at the sedentary level.  R. 207.

Plaintiff was again treated by Dr. Stringer on March 1, 2004.  R. 204.  Dr. Stringer noted that the prescribed injections had not been authorized.  *Id.*  The findings upon examination were the same as on January 28, 2004.  R. 203.  Noting that a functional capacity evaluation had determined that Plaintiff could do sedentary work, Dr. Stringer said that "she would be better able to work, if she has completed her treatment, which

would include injections." *Id*. He said "she is to try to return to work within the restrictions listed in her FCE." *Id*.

Plaintiff was examined by Dr. Stringer on April 30, 2004. R. 199. Her back had some paravertebral muscle spasm, and she had moderate limitation of back flexion and extension, but the pain was not radicular. R. 198. On June 30, 2004, Dr. Stringer found no evidence of paravertebral muscle spasm, some continued moderate limitation of back flexion and extension, secondary to pain. R. 194. She was seen again on August 23, 2004, with continued pain reported. R. 192. There was no evidence of nerve root compression. R. 191. She was markedly tender to palpation in the lower back, with moderate muscle spasm, and forward bending was 50% of normal. *Id*. Straight leg raising was positive. *Id*.

On September 22, 2004, Plaintiff was seen by Dr. Stringer, and he noted that she began lumbar facet injections the day before. R. 190. The findings on examination was much the same in the visits described above. R. 189. Plaintiff had injections on September 21, 2004, September 28, 2004, October 4, 2005, and October 12, 2004. R. 185-188. By December 31, 2004, Dr. Stringer found that Plaintiff had a "dramatic improvement" as a result of the injections, and her pain level had decreased from 9 to 2. R. 223.

By February 3, 2005, however, Plaintiff again reported increasing pain. R. 221. She had marked tenderness to palpation, mild muscle spasm, forward bending was limited to 50% of normal, and lateral bending and extension was 30% of normal. R. 220.

**Legal analysis**

### Whether the ALJ improperly disregarded the testimony of the vocational expert

As noted earlier, the vocational expert said that *if* Plaintiff suffers from "severe pain" or if she cannot work "eight hours a day, five days a week on a regular and sustained basis," Plaintiff would not be employable.  R. 54.  Plaintiff contends that the Administrative Law Judge improperly ignored this testimony.  Doc. 12, p. 9.

This contention misunderstands the nature of evidence from an expert witness.  A vocational expert does not determine whether Plaintiff in fact suffers from severe pain, or whether she can work eight hours a day, five days a week on a regular and sustained basis.  The vocational expert only considers a hypothetical set of impairments posed by the ALJ and then provides an opinion about the existence of jobs in the national economy that person can still do despite such assumed limitations.  "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).   If the hypothetical is not supported by substantial evidence, then the vocational expert's opinion based upon that hypothetical is irrelevant.  The ALJ did not improperly disregard vocational expert evidence.

### Whether the ALJ properly evaluated Plaintiff's pain testimony and the opinions of treating physicians

Plaintiff contends that the Administrative Law Judge failed to apply properly this circuit's standards for evaluation of her subjective testimony as to the degree of pain she experiences.  Plaintiff also argues that the ALJ improperly substituted his own

opinion for the findings of the treating physician.  Both contentions challenge the residual functional capacity determination of the ALJ and will be considered together.

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.  Social Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).  It is not necessary that the ALJ expressly identify this circuit's pain standard if his findings "leave no doubt as to the appropriate result" under the law.  Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence.  Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).  This circuit finds good cause to afford

less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004). The ALJ must clearly articulate the reasons for rejecting the treating physician's opinion. *Id*.

> The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . . Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Plaintiff first argues that the ALJ erred in failing to note that in September, 2001, an MRI revealed that Plaintiff had "moderate to marked impingement of the left nerve root" at L5-S1. Doc. 12, p. 14, citing R. 129. This clinical finding was not mentioned by the ALJ. However, this impingement of the nerve root was resolved by surgery on November 20, 2002, when Plaintiff had surgical decompression of the nerve roots. R. 180. Plaintiff had significant improvement after this surgery. R. 179. Thereafter, Plaintiff's treating physicians repeatedly found no clinical evidence of nerve root compression. R. 172, 171, 166, 165, 210, and 191. Consequently, there was good reason for the ALJ to have failed to mention nerve root impingement noted in the medical record in September, 2001.

Plaintiff next contends that the ALJ unfairly concentrated upon the portions of the medical reports that Plaintiff's pain was much better immediately after receiving the epidural steroid injections, and failed to note that the relief from these injections significantly diminished after a few months. Doc. 12, pp. 15-16. Plaintiff also argues

that the opinions and clinical findings of treating physicians were disregarded. *Id.*, pp. 16-17.

The ALJ did write about the improvements that Plaintiff experienced after injections, and discussed the findings of increased pain some months after the effects of the injections wore off. R. 16-17. Whether this was error requires evaluation of the evidence in the entire record. Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983) (determination of whether the ALJ's decision is supported by substantial evidence in the record requires review of entire record).

The clinical findings set forth above are mixed. At times Plaintiff had only moderate pain upon palpation, and sometimes the pain was marked. At times the straight leg raising test was positive for pain, but at times it was negative. There was limitation of flexion and extension that varied. There usually was no radiculopathy and there was no evidence of nerve root impingement. But more important, as noted by the ALJ, the treating physicians said that Plaintiff was capable of doing some sort of work despite these clinical findings and her experience of pain. Dr. Rohan, a treating physician, said that Plaintiff could do light work for four hours and should try six hours a day. R. 165, 124, 122. In April, 2003, after the surgery, Dr. Stringer noted from a functional capacity evaluation that Plaintiff could do light work, though Plaintiff reported increased pain. R. 170. In March, 2004, Dr. Stringer noted that Plaintiff had the residual functional capacity to do sedentary work. R. 203. A comprehensive residual functional evaluation determined that Plaintiff was capable of sedentary work, with limitations. R. 207. Accordingly, considering the medical record as a whole, the ALJ did not fail to give substantial weight to the opinions of treating physicians.

In support of the argument that the ALJ did not properly evaluate Plaintiff's pain testimony, Plaintiff also argues that it was not proper to rely solely upon the evidence of her daily activities.  Doc. 12, p. 18.  While not proper at step 1, it is appropriate for the Administrative Law Judge to consider a claimant's daily activities at steps 4 and 5 of the evaluation process.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).  If daily activities are to be considered, however, the Administrative Law Judge must consider such evidence together with all of the evidence in the record:

> We have consistently held that in ascertaining whether the Secretary's findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Secretary]."

Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Parker found the Administrative Law Judge's reliance upon Plaintiff's "daily activities," to discount her testimony as to pain, to have been flawed for failure to consider the claimant's testimony that she had to lie down after two hours of such work.  Id.  Similarly, Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995), held that a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing.  67 F.3d at 1561.  See also Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of *short duration*, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians.") (emphasis added).

In the portion of the opinion discussing Plaintiff's testimony about pain, the ALJ wrote:

> The degree of the claimant's complaints of pain is not considered fully credible.  Her ability to perform such a variety of daily activities tends to negate the credibility of her subjective complaints, especially the degree of pain she maintained she experiences.  The claimant cares for personal needs; daily walks a mile for exercise; babysits an infant grandchild; performs household chores, such as cleaning and doing the laundry; works on the computer; shops; and cooks simple meals (Exhibit 5E).  One would not reasonably anticipate that a person who experiences substantial drowsiness and side effects from medications, the degree of pain alleged, or severe depression and anxiety, to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities.

R. 17.

These factual findings are supported by substantial evidence in the record considered as a whole.  Plaintiff's daily activities are of longer duration and more strenuous than the activities described in Parker v. Bowen, Foote v. Chater, and Lewis v. Callahan.  Plaintiff testified that she and her husband do housework "very carefully," pacing themselves, and have help, but she cares for her daughter's eight month old son five days a week, five and one-half hours a day.  R. 45-47.  She also walks a mile every day.  R. 48.  She said she cannot bend at all, R. 48, but her ability to bend to 50% to 75% of normal is repeatedly noted by Dr. Stringer.  Caring for an eight month old child every day for nearly six hours a day, doing some housework, and walking a mile,[6] coupled with the opinions of the treating physicians that Plaintiff can do at least

---

[6] Plaintiff argues that the walking was ordered by Dr. Stringer.  That may be true, but the important factor is that Plaintiff can walk a mile a day, not why she does.

sedentary work, is substantial evidence in the record to determine that Plaintiff's pain testimony was not fully credible.

## Conclusion

Thus, considering the record as a whole, the findings of the Administrative Law Judge are based upon substantial evidence in the record, and those findings were sufficient to discount Plaintiff's pain testimony. Accordingly, the decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 2, 2006.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**